2023 PA Super 19

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIELLE SNYDER | : | |
| | : | |
| Appellant | : | No. 116 MDA 2022 |

Appeal from the Judgment of Sentence Entered November 24, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004865-2020

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.*

OPINION BY McLAUGHLIN, J.:                    **FILED: FEBRUARY 7, 2023**

Danielle Snyder appeals from the judgment of sentence entered following her open guilty plea to aggravated assault. She argues the court abused its discretion by imposing an excessive sentence. We affirm.

On September 3, 2020, Snyder and the victim were involved in a road rage incident. The victim was traveling north along Interstate 83 in York County approaching a one-lane construction zone when Snyder cut her off. The victim flashed her high beams at Snyder. Snyder later told police that the victim began to tailgate her so she "brake checked" the victim. When the construction pattern ended, the victim merged into the right lane and passed Snyder. When she attempted to merge back into the left lane in front of Snyder, Snyder quickly accelerated causing the two cars to collide. After the

---

* Former Justice specially assigned to the Superior Court.

impact, both Snyder and the victim pulled over to the right shoulder of the highway.

The victim got out of her car and approached Snyder's vehicle. An argument ensued and Snyder retrieved a knife from her car and stabbed the victim three times in the abdomen. She then fled the scene in her car. The victim attempted to flag down passing motorists for help, but no one stopped. The victim then got into her vehicle and drove herself to a nearby gas station.

Five days after the incident, the police located Snyder at her residence. Snyder admitted that she stabbed the victim because she was angry and wanted to teach her a lesson. Snyder also told the police that she hid her vehicle in her garage to prevent it from being seen and threw away the knife that was used to stab the victim.

Snyder was arrested and charged with two counts of aggravated assault and one count each of possession of instruments of crime, tampering with or fabricating physical evidence, attempted murder, and accidents involving damage to attended vehicle or property.[1] Snyder entered an open guilty plea to one count of aggravated assault. **See** 18 Pa.C.S.A. § 2702(a)(4).

At sentencing, the Commonwealth argued for a sentence at the higher end of the standard range, which was 12 to 18 months. N.T. Sentencing, 11/24/21, at 13. It recognized that the Pre-Sentence Investigation Report ("PSI") and psychological evaluation indicated that Snyder had been

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(4), 907(a), 4910(1), 901(a), 2502(a), and 75 Pa.C.S.A. § 3743(a), respectively.

diagnosed with bipolar disorder, which impacted her ability to control her impulses. *Id.* at 12. However, the Commonwealth maintained that Snyder was a danger to society because she stabbed a stranger as a result of a minor traffic accident, failed to call for help, fled the scene, and hid evidence. *Id.* at 13. The Commonwealth pointed out that Snyder was initially charged with attempted murder and was on supervision from previous charges at the time of the incident. *Id.* at 14.

The victim testified that she has been greatly affected by Snyder's actions and that it took her two and a half to three months to physically heal from the stabbing. *Id.* at 15. She stated that she still suffers from emotional harm because she must travel the same route to work where the incident occurred. *Id.* The victim indicated that she felt helpless when she tried to flag down help and no one stopped. She said, "I just held on to my side and just got in my vehicle and just drove to the [gas station] 'cause I didn't want to die." *Id.*

Snyder presented a letter to the court and testified that she was very remorseful for her actions. *Id.* at 29-30. She further explained, "I just know that there were significant things done on the other's half as well that I know triggered the response that I did. But it was not a response I wanted." *Id.* at 30. She emphasized that her psychological evaluation indicated that her bipolar disorder was a significant contributing factor to the event. *Id.* at 25. Snyder maintained that she did not have a history of violence and her actions were the result of her "impulsiveness, poor judgment, and significant acute

stress that happened as a result of this confrontation[.]" *Id.* at 24, 26. She emphasized that she was actively in treatment for her mental health issues at the time of the incident. *Id.* at 22. Snyder also gave the court a forensic psychiatric evaluation performed by Dr. Steven Erickson.

Before imposing Snyder's sentence, the court stated:

> The [c]ourt has considered all of the information that was presented today, the information previously submitted by the defense, the statements, both written and oral, of Miss Snyder, the evaluation and CV of Dr. Erickson, evidence presented by the Commonwealth, the statement of the victim, all of the surrounding circumstances and evidence in the case.
>
> [T]his isn't traffic court. I don't really care who caused the accident for sentencing purposes. This isn't about, you know, who was driving too close to who or who cut off who. That's not what this case is about.
>
> This is about a stabbing at the side of the road after there was an accident. So I'm not going to get dragged down into the weeds about, you know, who was brake-checking who or driving too close to who. That might have been relevant if we ended up going to trial on this, but it's not relevant now.
>
> ***
>
> There was an accident, and this [c]ourt finds that Miss Snyder came out with a knife and brutally stabbed the victim three times and abandoned her by the side of the road where she would have died if she had not gotten assistance or been able to drive for help.
>
> The [c]ourt takes judicial notice of the fact that the locations where she was stabbed contained vital organs, and the fact that she was stabbed three times reflects the fact that [Snyder] was seeking to inflict at least serious bodily injury upon the victim, if not death. So let's make the record clear on those points.

*Id.* at 35-38.

The court also extensively discussed Snyder's psychological evaluation by Dr. Erickson and Snyder's mental health issues. It noted that according to the PSI, Snyder admitted that she had a history of abusing drugs and alcohol and was hospitalized in 2012 for suicidal ideations. *Id.* at 41. The court agreed with Dr. Erickson that Snyder's bipolar disorder made her more prone to impulsive behavior and poor decision-making. *Id.* at 45. However, the court rejected the conclusion that Snyder's bipolar disorder was the sole cause of the stabbing. Rather, it found that Snyder's actions were the result of an antisocial personality and a willful disregard for the law. *Id.* at 45-46. The court concluded:

> This [c]ourt finds that [Snyder] is an extremely dangerous person, that it is not just due to what she did to this victim, but by her incredible overreaction and life-threatening violence through her actions, she demonstrated she's extremely dangerous to strangers in this county who might cross her.
>
> This was a horrific and mindless extreme act of violence, and the [c]ourt believes that [Snyder] is continuing to misrepresent about how it occurred, why it occurred, what her role was, and I find her expressions of remorse to be contrived solely for the purpose of the court proceeding.
>
> Due to the extreme violence involved, her absconding, leaving her victim helpless by the side of the road that could have likely led to a slow and painful death, the extreme harm -- physical harm and emotional harm that continues to this day, what I believe is a lack of genuine remorse, a genuine lack of rehabilitative potential, [Snyder] continuing to lie about how it happened, why it happened, I think [she] continues to be a threat to society. She's going to be sentenced above the aggravated range.

***Id.*** at 47-48.

The court sentenced Snyder to a period of incarceration of four years and nine months to nine years and six months. Following sentencing, Snyder challenged her sentence in a post-sentence motion, which, after a hearing on December 14, 2021, was denied. This timely appeal followed. Snyder raises one issue for our review: "Did the trial court abuse its discretion in sentencing Danielle Snyder above the aggravated range and improperly discounted her rehabilitative potential and needs?" Snyder's Br. at 4.

Snyder challenges the discretionary aspects of her sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Conte***, 198 A.3d 1169, 1173 (Pa.Super. 2018). Before reviewing the merits of Snyder's claim, we must determine whether: "(1) the appeal was timely; (2) the appellant has preserved [her] issue; (3) [her] brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of [her] sentence; and (4) the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code." ***Commonwealth v. Green***, 204 A.3d 469, 488 (Pa.Super. 2019). ***See also*** Pa.R.A.P. 2119(f) (stating that an appellant who challenges the discretionary aspects of a sentence "shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence").

Here, Snyder has complied with the first three requirements: her appeal is timely, she preserved the issue in a post-sentence motion, and her brief includes a statement of the reasons for allowance of appeal. We now turn to whether Snyder has raised a substantial question.

A substantial question exists when the appellant makes a colorable argument that the sentencing judge's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa.Super. 2010). Snyder's Rule 2119(f) statement claims that the sentencing court disregarded her rehabilitative potential and sentenced her to a manifestly excessive sentence. Snyder's Br. at 13. This presents a substantial question. *See Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa.Super. 2014) (stating "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question").

Snyder argues the court failed to consider her rehabilitative needs in imposing a manifestly excessive sentence. Snyder's Br. at 20. She argues "[h]er lack of violent history, the fact her actions were brought about by extreme stress and mental illness, and her efforts to address her mental illness, demonstrate [her] rehabilitative potential and make her sentence unreasonable given the nature of the charges." *Id.* at 16-17. According to Snyder, her actions were not a random act of violence but rather "had their root cause in a severe mental illness [she] was attempting to address." *Id.* at

21. Snyder also emphasizes she was very remorseful for her conduct. *Id.* at 24.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa.Super. 2018) (citation omitted). An abuse of discretion occurs where "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* (citation omitted). In imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

Where the court has the benefit of a PSI report, we presume the court was aware of all appropriate sentencing factors and considerations and consider the requirement that the court place its reasoning on the record to be satisfied. *Commonwealth v. Johnson-Daniels*, 167 A.3d 17, 26 (Pa.Super. 2017). In conducting appellate review, we may not reweigh the sentencing factors and impose our own judgment in place of that of the trial court. *See Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009).

Here, although the court sentenced Snyder outside the sentencing guidelines, "[i]t is well established that the [s]entencing [g]uidelines are purely advisory in nature." *Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007). A "sentencing court is permitted to deviate from the sentencing

guidelines; however, the court must place on the record its reasons for the deviation." ***Commonwealth v. Garcia-Rivera***, 983 A.2d 777, 780 (Pa.Super. 2009) (citations omitted). Indeed,

> the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

***Commonwealth v. Bowen***, 55 A.3d 1254, 1264 (Pa.Super. 2012) (citation and brackets omitted).

Instantly, the court adequately stated on the record its reasons for deviating from the guidelines. The court indicated that it considered all the information presented at the sentencing hearing, the information previously submitted by Snyder, and Snyder's oral and written statements. It also noted Dr. Erickson's psychological evaluation, the evidence presented by the Commonwealth, the statement of the victim, and all the surrounding circumstances and evidence in the case. In addition, the court had the benefit of a PSI report. We therefore presume the court weighed all relevant factors, including Snyder's rehabilitative needs. ***Johnson-Daniels***, 167 A.3d at 26.

Further, the court's statements at sentencing do not reflect that the court neglected to consider Snyder's rehabilitative needs. Rather, the court considered that Snyder failed to manage her mental health issues when she violently stabbed a stranger three times near vital organs and left the victim

to die, and thus was a danger to the community. The court's reasons for its sentence expressed an appropriate consideration of the protection of the public, the gravity of the offense as it related to the impact on the life of the victims and on the community, and the rehabilitative needs of Snyder. *See* 42 Pa.C.S.A. § 9721(b). We discern no abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/07/2023