J-A07029-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ZACHARY SANTANA | : | |
| | : | |
| Appellant | : | No. 1994 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 28, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002767-2021

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED MAY 2, 2023**

Zachary Santana appeals from the judgment of sentence entered following his guilty pleas to aggravated assault, conspiracy to commit aggravated assault, terroristic threats, possession of an instrument of crime, simple assault, and conspiracy to commit simple assault.[1] Santana argues the court imposed a manifestly excessive sentence, failed to consider all relevant sentencing factors and to adequately state the reasons relied upon, and relied on improper factors. We affirm.

At his sentencing hearing, Santana stipulated to the following. A minor, N.M., posted on social media that Santana was "going crazy at her house and punching things." N.T., Sentencing, 6/28/22, at 6. Some of her friends, including C.S., went to her house to confront Santana. An altercation between

_____

[1] **See** 18 Pa.C.S.A. §§ 2702, 903, 2706, 907, 2701, and 903, respectively.

C.S. and Santana ensued. Later that day, C.S. and Santana met at the play yard of an elementary school to finish the fight. C.S. was accompanied by a group of his friends. Santana and his companions arrived in several vehicles. At least one of Santana's friends had a gun, and Santana had a knife. Most of C.S.'s friends ran away when Santana's group began to approach, and Santana yelled to them, "Stop or we will shoot." *Id.* at 7. Santana stabbed C.S. multiple times in the back, abdomen, and lower thorax area. Once C.S. was on the ground, Santana and others in the group kicked him. C.S.'s friend, E.G., helped him contact the police. C.S. was bleeding profusely and was taken to the hospital. Each of C.S.'s lungs were punctured, and he had fractured ribs, two broken forearms, "through and through stab wounds," and superficial wounds to his face and shoulder. *Id.* at 7-8.

After Santana fled, he threw the knife out of a car window and went to a friend's house to wash off the blood. He posted photos on social media of police cars looking for him, with captions stating, "[F]uck the police," and, "I'm going to die tonight." *Id.* at 8. Two days after the assault, Santana's mother[2] made him turn himself in to the police. He gave a statement admitting to the assault. Santana told the police the name of one of his friends that had participated but would not identify any others.

The court acknowledged it had received a pre-sentence investigation ("PSI") report, and Santana's counsel and the attorney for the Commonwealth

---

[2] According to her testimony, she is the ex-wife of Santana's biological father. *See* N.T. at 31.

both told the court they had no objections or corrections to the PSI. *Id.* at 4, 47. The court acknowledged standard ranges under the Sentencing Guidelines, and that aggravated range for aggravated assault was a minimum of 85 to 96 months' incarceration and the aggravated range for conspiracy was 67 to 78 months' incarceration. *Id.* at 20.

The Commonwealth introduced victim impact statements by C.S., C.S.'s mother, and C.S.'s father, and read them into the record. In its Rule 1925(a) opinion, the court summarized the impact of the assault on C.S. and his family as follows.

> While [C.S] has physically recovered from his injuries, mentally he still suffers tremendously. [C.S.] has nightmares, trouble sleeping, and constantly experiences pain. He went from being an aspiring college athlete to no longer even being able to attend high school after the assault. He underwent several surgeries due to recovery complications and hours and hours of physical therapy to perform the most basic of tasks. Further, not only has [C.S.]'s life been forever changed, but the lives of his family will also never be the same[.] [C.S.]'s Mother testified that her other children slept in her bedroom because they were so terrified of someone coming into their home and harming them. She testified that she and her husband, [C.S.]'s stepfather, needed to purchase an alarm system and firearm to even feel an ounce of safety in their own home and that she still experiences severe anxiety every time [C.S.] and his siblings are out of sight. [Santana]'s callous decision shattered the lives of [C.S.] and his family, and they all will be forever traumatized by the assault.

Trial Court Opinion, filed September 19, 2022, at 7 (internal citations omitted).

The Commonwealth also informed the court of Santana's prior record, including juvenile adjudications of delinquent for simple assault and theft by

- 3 -

unlawful taking, and convictions for unauthorized use of an automobile, receiving stolen property, and possessing a small amount of marijuana.

Santana testified that in 2020, he had been involved in a car accident which fractured his neck and gave him a traumatic brain injury. He was hospitalized for two months and is still recovering. Santana's counsel asked the court to consider a doctor's report it had submitted. Santana's counsel stressed that the doctor's report stated that Santana's brain injury had created cognitive difficulties in his problem solving, decision making, and controlling emotional outbursts.

Santana further testified that C.S. had attacked him at N.M.'s house while he was sleeping but said that his stabbing C.S. in retaliation "was the stupidest decision of [his] life." *Id.* at 26. He claimed the other people in his group at the fight had been friends of the one person whose name he gave the police, and not people he knows himself. He apologized to the court and to C.S. and his family, and stated he takes full responsibility for his actions. He also stated he "now understand[s] how [his] brain injury played a huge part into [his] reaction with such violence." *Id.* at 28. Santana stated he is committed to becoming a functioning member of society and bettering his mental health. He informed the court he now takes Lexapro, Seroquel, and Remeron. He stated, "I never meant for any of that to happen to C.S. Neither did I know that things were going to escalate that much just by letting my friend take me across the street to confront him." *Id.* at 46.

Santana's stepmother, a social worker, also testified. She said she raised Santana since he was three years old, and that he had "a great childhood." *Id.* at 31. She acknowledged that Santana has had anger issues throughout his life, and stated he has taken medication for ADHD and received therapy since he was a juvenile. She stated Santana changed after he turned 18, she believes his brain injury played a role in the current assault, and he needs mental help.

Before imposing sentence, the court stated the following:

I have to say, I don't really think I've heard a good explanation for what happened – six, seven, eight of you? That's not enough? You've got to take a knife to a fight? . . .

Then you have to stab him and stab him again and again and again stabbing him in the back. And when he's on the ground, kick him? And then say that it was just a bad decision and it got out of hand and you're sorry? I think you're sorry. I don't know if you're sorry for what you did to him as much as you are for finding yourself in this predicament but I will accept what you have to say. It does not excuse what you did.

Does it really matter if there are guns? You couldn't just stand there and have a fight like – not that that's good but you couldn't fight him man to man? You gotta bring a knife and all your friends? That's what I don't understand.

You're lucky you're not going to jail for life. Do you realize how close he came to dying? You stabbed him twice in the back, once in the stomach. He had broken bones throughout his body from being kicked and beaten by you and, presumably, your friends – not that they're on trial here because you haven't revealed the identity of any of them except for the one – multiple stab wounds to his arms and using his arms to defend himself. The facts are just – much like other cases we've heard today. The facts of this case are just horrific.

You're 21 years old. Your life has been changed. His life may be changed forever. He has to live with not just the physical scars

but the emotional scars of what you did to him and what could have been for him in his life. We don't know, but the odds are from what I'm being told is, he will never fully recover from what you did to him.

The indication is, he's had multiple surgeries. Even today, he still has pain, he's not pain free, and his one passion in life playing basketball has been taken from him. Enjoying his senior year of high school has been taken from him. Over what? Over doing a good deed trying to protect you from maybe doing something to a 16-year-old young woman. That's what we're looking at.

And you have a long history of anger and aggressive behavior. That's in the report. Anger issues, long history of anger issues and aggressive behavior. The report says you suffer from anger issues. You have had multiple misconducts at the Bucks County Correctional Facility while you've been there, you've displayed disregard for others.[3]

You have failed to comply when you were in juvenile detention with placement. You failed to comply with the directives when released into the community as an adult. [The doctor's report and the PSI] both indicate that you had a neglectful home environment.

That's until the young woman who testified before me today came along and at least someone had a positive influence in your life. I understand that you've had, maybe not an ideal upbringing but I understand that. You had a bad car accident which resulted in, perhaps, a brain injury and other issues that affect you to this day.

But you have displayed anger issues long before that accident. And I think in the report even, Miss Blancl reported at the juvenile detention or juvenile proceeding in December of 2018 that you're extremely disrespectful. You don't abide by curfews,

_____

[3] The PSI report is not in the certified record. According to the court's Rule 1925(a) opinion, Santana has "a well-documented history of violent outbursts — beginning as a juvenile in 2016 when he was adjudicated delinquent of Simple Assault, Harassment, and Disorderly Conduct and extending to just before sentencing when he was is in the Bucks County Correctional Facility and received several misconducts for fighting and threatening guards." Trial Ct. Op. at 6-7. Santana does not contest these statements.

you punch holes in the walls, which I find to be ironic since that's what you were doing in this case.

So we know that you've had a long history of aggressive behavior and anger issues, and culminating in the stabbing of another individual. So we've taken into consideration the information I have about you and we'll incorporate [sic] for the purposes of this record and our reasons for sentence. We'll incorporate the [PSI] and [the doctor's] report.

I've gone over the guidelines with you, discussed with you the impact upon the victim and, of course, the need to protect the victim or the community from you going forward. Until you get your anger under control and your aggressive behavior under control, I think you present a danger to just about anybody out there in the community that you disagree with.

As long as you're out there and you don't have these things under control, you're a danger to anybody and everybody you come in contact with when you get mad. I think as you stand here today, you seem like a nice young man. You're polite, you're respectful, but there is a dark side to you that causes you to behave or act out in way that only those who experience it can understand.

And so I think the need to protect the community and your need for rehabilitation which, again, is extensive and considerable because you will be back here or you will be back in someone else's courtroom unless you get this under control. So hopefully you'll find some type of program or the state will find some type of program that can meet your needs. So for those reasons, I believe a sentence of total confinement is appropriate.

. . . I should say that I do give him credit for turning himself in; although it was at the insistence of another individual. He did turn himself in and he did plead guilty and he did give a statement implicating himself and he had accepted responsibility for his actions today.

*Id.* at 47-53.

The court sentenced Santana to nine and one-half to 20 years' incarceration for aggravated assault, 20 years' concurrent probation for conspiracy to commit aggravated assault, and two years' consecutive

probation for terroristic threats. The court imposed no further penalty on the remaining charges. The court ordered that Santana have no contact with C.S. or his family, and that he be assessed for mental health treatment or anger issues.

Santana filed a motion for reconsideration. He claimed the sentence "exceeds what is necessary to protect the public and what is necessary to rehabilitate" him, and that the court "failed to consider mitigating factors" or his "age, conduct, character, criminal history, [and] rehabilitative needs." Motion to Modify and Reconsider Sentence, 7/1/22, at ¶¶ 5-7. The court denied the motion.

Santana appealed. He raises one issue: "Did the [t]rial [c]ourt abuse its discretion in sentencing [Santana] by imposing manifestly excessive sentences, failing to consider all relevant factors, failing to adequately state the reasons relied upon and relying on improper factors in imposing said sentence?" Santana's Br. at 4.

"The right to appellate review of the discretionary aspects of a sentence is not absolute[.]" *Commonwealth v. Snyder*, 289 A.3d 1121, 1125 (Pa.Super. 2023) (quoting *Commonwealth v. Conte*, 198 A.3d 1169, 1173 (Pa.Super. 2018)). Before we reach the merits of a discretionary sentencing claim, we must determine whether (1) the appeal was timely, (2) the appellant preserved his issues, (3) the appellant's brief includes a concise statement for the reasons relied upon for allowance of appeal, *see* Pa.R.A.P. 2119(f), and (4) the statement raises a substantial question. *Id.* at 1126. "A substantial

question exists when the appellant makes a colorable argument that the sentencing judge's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process." ***Id.***

Santana's appeal was timely, he preserved his issue in his post-sentence motion, and he included a Rule 2119(f) statement in his brief. In it, Santana argues the court violated fundamental sentencing norms because it relied primarily on the nature of the crime and did not contemplate the protection of the public or Santana's rehabilitative needs. He contends the sentence was manifestly excessive considering his youth, his history of mental illness, and his traumatic brain injury. He has thus presented a substantial question. ***See id.*** (finding substantial question raised where appellant claimed court "disregarded her rehabilitative potential and sentenced her to a manifestly excessive sentence"). We therefore turn to the merits of his argument.

Santana asserts his sentence for aggravated assault and conspiracy each fell above the aggravated range of the Sentencing Guidelines (which went up to minimums of 96 months and 78 months, respectively), and that his aggregate sentence of 114 to 240 months was manifestly excessive. Santana claims that the transcript of the sentencing hearing shows that the court focused mainly on the gravity of the offense and did not consider the mitigating factors or Santana's rehabilitative needs.

Santana argues he was only 21 years old at the time of the assault, and that he had recently been involved in a severe car accident. He asserts that

he was hospitalized for two months following the accident and was unable to recognize family members and had to relearn to walk. He claims the doctor's report discussed his ensuing difficulties with emotional regulation and explained that his below-average intellect and ADHD can contribute to mood disorders when coupled with abuse. Santana alleges that when he was three years old, he was removed from his mother's care due to abuse and neglect, and that afterwards, he lived with his father, who was in and out of jail. These circumstances "detracted . . . from [his] ability to forge a strong sense of self." Santana's Br. at 21 (quoting the doctor's report). Santana claims the court also failed to consider that he had accepted full responsibility for his actions, including turning himself into the police, waiving his preliminary hearing and arraignment, pleading guilty, and apologizing.

A court has broad discretion over sentencing, and we will only vacate a sentence falling outside of the guidelines if it is "unreasonable." **Commonwealth v. Walls**, 926 A.2d 957, 961, 963 (Pa. 2007); 42 Pa.C.S.A. § 9781(c)(3). A decision is unreasonable in this context if it "is irrational or not guided by sound judgment." **Walls**, 926 A.2d at 963 (internal quotation marks and citation omitted); **accord Commonwealth v. Sarvey**, 199 A.3d 436, 456 (Pa.Super. 2018).

The Sentencing Code requires a court to impose a sentence consistent with "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). If it deviates from the ranges

of minimum sentence-lengths recommended by the Sentencing Guidelines, the court must state its reasons for doing so. *Id.* However, "[a] sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Commonwealth v. Rush*, 162 A.3d 530, 544 (Pa.Super. 2017) (citation omitted). In addition, "[a] sentencing court's indication that it has been informed by a [PSI] report can satisfy the requirement of placing reasons for imposing the sentence on the record." *Commonwealth v. Johnson-Daniels*, 167 A.3d 17, 26 (Pa.Super. 2017).

The court's sentence was rational, based on the appropriate factors under the Sentencing Code, and accompanied by a sufficient statement of reasons. As the court explained at the time of sentencing, its sentence was guided by the "horrific" facts of the assault, its impact on the victim, Santana's poor excuses for his actions, and his history of violence. N.T. at 47-53. The record belies any suggestion that the court failed to consider Satana's traumatic brain injury or Santana's need for rehabilitation. Rather, it shows the court considered these factors in conjunction with Santana's inability to control his anger before the accident and his failure to positively respond to any previous attempts at treatment. Moreover, the court's consideration of a PSI report rebuts Santana's suggestion that the court did not consider all relevant sentencing criteria or that it failed to state sufficient reasoning for departing from the Sentencing Guidelines. *See Johnson-Daniels*, 167 A.3d

- 11 -

at 26. To the extent that Santana contends the court did not afford proper weight to any specific facts related to his personal history or his brain injury, as detailed in the PSI and doctor's report, those arguments are waived by Santana's failure to ensure those documents' inclusion in the certified record. ***Commonwealth v. Midgley***, 289 A.3d 1111, 1120 (Pa.Super. 2023).

The court also duly considered that Santana ultimately turned himself in to the police and apologized but weighed these facts alongside his failure to take full responsibility. In its Rule 1925(a) opinion, the court further elaborated on this point as follows.

> Offensively, but not shockingly, [Santana] has repeatedly minimized his role in the assault. He blames his friend for taking him to confront C.S. and insists he did not know it would "escalate that much" (despite being the one to bring the knife and gun). While this [c]ourt considered the fact that [Santana] apologized for his actions and requested that he be able to give [C.S.] and his family an apology letter, it is the first time [Santana] had shown remorse for his actions since the date of the attack. However, in the same breath he used to apologize, he also attempted to blame a traumatic brain injury stemming from a 2020 car accident for his aggressive behavior, despite the clear indication that [Santana] engaged in violent behaviors long before 2020. Unsurprisingly, the PSI indicates [Santana] has a high risk of reoffending and this [c]ourt has no reason to believe that conclusion is incorrect.

Trial Ct. Op. at 7-8 (internal citations omitted).

As the court's sentence was not unreasonable, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/2/2023