J-S04008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK GIWEROWSKI | : | |
| | : | |
| Appellant | : | No. 904 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000287-2021

BEFORE: BOWES, J., STABILE, J., and LANE, J.

MEMORANDUM BY BOWES, J.:            **FILED MARCH 26, 2024**

Mark Giwerowski appeals from the judgment of sentence of four to eight years of imprisonment, followed by three years of probation, imposed upon his thirty-six convictions arising from the theft of an ambulance and an ensuing police pursuit. We affirm.

We glean the following facts from the certified record. At approximately 9:00 p.m. on February 28, 2020, emergency services were dispatched to the Roosevelt Inn, a hotel located in Philadelphia, based on the report of a combative male. Firefighter Albert Buclary responded first to the scene, where he encountered Appellant arguing with security and staff in the lobby of the hotel. Appellant was wearing nothing but his boxers and had dried blood on his hands and mouth. Firefighter Buclary tried on several occasions to have Appellant sit down so that he could be assessed, but Appellant instead

continued walking up and down the hallways, shouting various proclamations, including that he was God.

After approximately ten minutes, both medic units and police arrived. The medics vacated their ambulance but kept the engine running. While responding police officers were still initially assessing the scene, Appellant quickly walked outside the hotel and got into the driver's side of the ambulance. Firefighter Buclary observed this and entered the vehicle from the passenger side, attempting to push Appellant out through the driver's door. Appellant pushed back, and at one point, placed his bloody finger into Firefighter Buclary's mouth. Thereafter, a colleague pulled the firefighter out of the vehicle for his safety. Firefighter Buclary later testified that, because of the incident, he underwent extensive disease testing for about six or seven months, though the results were ultimately negative.

While Firefighter Buclary was attempting to push Appellant out of the ambulance from the passenger side, Philadelphia Police Officer Timothy Kelley was trying to remove Appellant from the driver side. Appellant ignored repeated commands to get out of the vehicle. Since Appellant was not wearing any clothes or shoes, the officer had trouble establishing any grip. Officer Kelley then noticed that Appellant was attempting to put the vehicle in gear and resorted to using his baton to strike Appellant several times in the leg. Appellant was able to shift into reverse and began backing up, striking a police cruiser. Appellant then shifted into drive and began to leave the parking lot. As he did so, Officer Kelley fired approximately six shots from his service

weapon toward Appellant, striking him three times in the lower half of his body.

Despite being shot, Appellant led police on an hour-long slow speed chase throughout the northeastern portion of Philadelphia. During the pursuit, he abided by the speed limit and generally avoided colliding with traffic, but nonetheless hit several law enforcement and civilian vehicles. Law enforcement deployed a helicopter to assist in tracking Appellant. At one point, Appellant exited the vehicle and appeared as if he was surrendering. However, when officers approached him, he threatened to kill them and he got back into the vehicle, driving off. Ultimately, the chase ended when officers utilized tire spikes to disable the ambulance.

The Commonwealth charged Appellant with a total of forty-eight crimes, which included several counts of aggravated assault, robbery of a motor vehicle, terroristic threats, driving under the influence of a controlled substance, criminal mischief, and recklessly endangering another person. Appellant proceeded to a non-jury trial, wherein multiple officers, firefighters, and layperson victims testified as to the above-described events. The evidence also established that Appellant did not have any alcohol or illegal substances in his system at the time of the incident. At the trial's conclusion, the court acquitted Appellant of twelve of the charges, including aggravated assault as to Officer Kelley. However, it found Appellant guilty of the remaining thirty-six offenses, which included robbery of a motor vehicle,

aggravated assault–attempt to cause bodily injury to police or enumerated persons, and ten other felonies.

At sentencing, the Commonwealth advocated for a prison term of ten to twenty years, corresponding roughly to one to two years of incarceration for each felony conviction. Appellant presented mitigation evidence, highlighting that this was a unique mental health episode, that Appellant was not under the influence of any controlled substances during the incident, and that he had been successfully engaged in consistent treatment since the time of his arrest. After placing its considerations on the record, the court imposed a sentence of four to eight years in prison for robbery of a motor vehicle, followed by three years of probation for the terroristic-threats conviction. As to the remaining thirty-four convictions, the court either ran any term concurrently or imposed no further penalty.

On October 17, 2022, Appellant filed a post-sentence motion challenging the length of his sentence. The motion was denied by operation of law on April 5, 2023. This timely appealed followed.[1] Appellant complied with the

---

[1] Ordinarily, a notice of appeal must be filed within thirty days of the denial of a timely post-sentence motion. However, where, as here, the clerk of courts neglects to promptly enter an order pursuant Pa.R.Crim.P. 720(B)(3)(c) reflecting the denial by operation of law, an appeal from the belatedly-entered order is deemed timely. *See*, *e.g.*, *Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa.Super. 2003).

court's order to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b).[2]

Appellant presents a single issue on appeal:

Did the lower court err as a matter of law, abuse its discretion, violate general sentencing principles, and impose a non-individualized sentence when it imposed a sentence of [four] to [eight] years[ of] incarceration followed by [three] years[ of] probation, a manifestly excessive sentence in light of the fact [that] the sentencing guidelines recommended a sentence of at most [three] to [six] years[ of] incarceration in the aggravated range where Appellant had extensive mitigation, and stated that general deterrence required a lengthy sentence when the conduct was the result of a unique mental health crisis?

Appellant's brief at 4.

Appellant's claim implicates the discretionary aspects of his sentence. It is well-settled that a defendant does not have an absolute right to review by this Court of such a challenge.

Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Solomon*, 247 A.3d 1163, 1167 (Pa.Super. 2021) (*en banc*) (cleaned up).

---

[2] We do not have the benefit of a Rule 1925(a) opinion in this matter, as the jurist who presided over trial and who sentenced Appellant, the Honorable Mia R. Perez, was subsequently commissioned to the federal bench.

Here, Appellant timely appealed and preserved this issue in a post-sentence motion. He also included a Pa.R.A.P. 2119(f) statement in his brief, asserting that he raises a substantial question because the court imposed a sentence outside the aggravated guideline range and neglected to consider mitigation evidence or Appellant's rehabilitative needs. The allegation of an excessive sentence, in conjunction with an assertion that the court failed to consider mitigating factors, raises a substantial question. ***See Commonwealth v. Snyder***, 289 A.3d 1121, 1126 (Pa.Super. 2023) ("Snyder's Rule 2119(f) statement claims that the sentencing court disregarded her rehabilitative potential and sentenced her to a manifestly excessive sentence. This presents a substantial question." (cleaned up)).

Turning to the merits of these claims, our standard of review is as follows:

> Appellant must demonstrate that the sentencing court abused its discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, Appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Solomon***, 247 A.3d at 1168 (cleaned up).

A trial court's sentence "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "When imposing sentence, a

court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." ***Commonwealth v. Taylor***, 277 A.3d 577, 593 (Pa.Super. 2022) (cleaned up).

Pursuant to 42 Pa.C.S. § 9781(c), we can vacate and remand only if we find that: (1) the court intended to sentence within the guidelines, but "applied the guidelines erroneously;" (2) a sentence was imposed within the guidelines, "but the case involves circumstances where the application of the guidelines would be clearly unreasonable;" or (3) "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c). The parties do not dispute that several of the sentences imposing incarceration here exceeded the guidelines, though they were all run concurrently to each other. Therefore, they must be affirmed unless they are unreasonable. While reasonableness is not defined in the statute, it "commonly connotes a decision that is 'irrational' or 'not guided by sound judgment.'" ***Commonwealth v. Velez***, 273 A.3d 6, 12 (Pa.Super. 2022) (citation omitted).

Finally, when the court has the benefit of a pre-sentence investigation ("PSI") report,

> we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

> A PSI report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencing courts are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the [PSI] report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion.

*Commonwealth v. Watson*, 228 A.3d 928, 936 (Pa. Super. 2020) (cleaned up).

With this background in mind, we address to Appellant's arguments that the trial court imposed an unreasonably excessive sentence. First, he maintains that the court did not properly consider the extensive mitigation evidence presented both at trial and at sentencing. *See* Appellant's brief at 26-28. This includes the facts that Appellant: (1) was suffering from a mental health crisis and had no illegal substances in his system at the time of the chase; (2) had a minor criminal history and prior record score of zero; (3) was abused as a child being raised by a single mother; and (4) has had long-term physical problems with his back, which caused employment and depression issues. *Id*. Second, Appellant asserts that the court wrongly weighed deterrence principles and Appellant's decades-old prior traffic infractions in fashioning the sentence. *Id*. at 28-33. He opines that the sentence "cannot have the deterrence value the lower court intended it to" because Appellant's actions were the result of a unique mental health crisis. *Id*. at 32.

On review, we are not persuaded that the trial court abused its discretion or imposed an unreasonable sentence. First, since the court had the benefit of a PSI report, we presume that it "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Watson*, 228 A.3d at 936. Beyond that, during the sentencing hearing, the court thoughtfully articulated at length the many factors it considered, which did in fact include the mitigation evidence Appellant presented. Particularly, it stated the following before handing down Appellant's sentence:

> In fashioning a sentence here today, the court has taken into account the presentence investigation, the mental health report, [Appellant]'s prior record score, offense gravity score, and range, the documents handed up by counsel as both collectively as D-1[,] which were the letters from the Greater Philadelphia Health Action incorporated, signed by [Appellant]'s counselor, indicating his participation in psychiatric services since [January 5, ]2021, as well as the Commonwealth's sentencing memorandum, and the other exhibits submitted by counsel here today.
>
> As the individual who heard this case, it is probably one of the most interesting cases that I've had to handle in my time on this bench and probably one of the most difficult sentencings. There is a lot here in terms of mitigation, the fact that [Appellant] is coming before this court with a prior record score of zero, the nature of this particular case, the fact that there was an entire section of the city that frankly was affected by [Appellant]'s actions that day, the size of the police response, the civilians who were hurt in accidents or had their property damaged. [Appellant] himself suffered from three gunshot wounds that day. Chaos is probably the best way to describe what occurred that evening. And yet, there's also portions of the chase, for lack of a better word, the pace of it, which was incredibly slow, this was not a typical fleeing from police that this court hears of somebody going [sixty] miles per hour on a residential street. We actually had

[Appellant] going well below the speed limit for the majority of the police chase. But I also have individuals being punched, I have individuals being harmed, I have officers whose lives were put in danger, the size of the vehicle, this vehicle was several tons in size, extremely large.

There were no narcotics in [Appellant]'s system, and I am giving that great weight here today. But I'm giving that weight because the majority of the cases that I see that are similar to this involve PCP or [synthetic cannabinoids] and that's not here and I will fully admit that this court was shocked when I learned that the medical records contained nothing that was illicit, no alcohol, no narcotics in [Appellant]'s system.

And yet, there are factors that I am weighing, including, I think [counsel] was right, the fact that I do have more than [twenty] plus infractions, Motor Vehicle Code infractions that typically I wouldn't even consider those, but given the nature of this case I think they are relevant, the harm to the individuals that evening, both civilians and officers, the disruption in our city. And I am taking into account that we are now looking at mental health illness very differently not just within the confines of our city but across this country, the response that we have towards issues of what could possibly be an acute mental health episode. It's difficult, though, the beauty and the luxury of being in a courtroom and being a judge and the attorneys in this case is we have the ability to look backwards, hindsight, and in those moments it's not always easy to do, the situations are volatile, and they are concerning. And I am looking at the nature of the circumstances in this particular situation, and very rarely do I cite deterrent effect, very rarely does this court do that, but the reality is that this was broadcasted live as well as for several days after in our city. And we do have an issue in our city with regards to whether it's vehicles being stolen, fleeing from police, or even frankly with dirt bikes weaving in and out of traffic that cause significant public risk.

I am taking all of these factors into consideration in crafting a sentence.

N.T. Sentencing, 10/7/22, at 30-34 (unnecessary capitalization omitted).

Hence, the certified record belies Appellant's claim that the court did not

- 10 -

consider mitigation evidence. On the contrary, it is plain that the trial court carefully weighed the many appropriate and competing factors in this unique case.

We also find no fault with the court considering the general deterrent effect of an incarceration sentence. As the Commonwealth aptly highlights in its brief, general deterrence is one of the many purposes served by a criminal sentence. *See* Commonwealth's brief at 8 (citing ***Commonwealth v. Coleman***, 285 A.3d 599 613 (Pa. 2022)).

Finally, while the prison sentence imposed for robbery of a motor vehicle was itself above the aggravated minimum range of the sentencing guidelines, Appellant was nonetheless convicted of **eleven other felony offenses**, the sentences for all of which were run concurrently. Had the trial court exercised its discretion to run them consecutively, even if each was within the standard range, Appellant could have faced more than the minimum of ten years in prison that the Commonwealth requested.

For all the above reasons, we do not find that the sentence imposed by the trial court was the product of an abuse of its considerable sentencing discretion, and therefore it must be upheld.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/26/2024