J-S31025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES SHEDRICK | : | |
| | : | |
| Appellant | : | No. 2635 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 31, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001429-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES SHEDRICK | : | |
| | : | |
| Appellant | : | No. 2636 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 31, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001431-2019

BEFORE: BOWES, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED DECEMBER 2, 2024**

James Shedrick appeals from the judgment of sentence entered following his convictions for third-degree murder, endangering the welfare of a child ("EWOC"), simple assault of a child, and possessing an instrument of crime ("PIC").[1] Shedrick argues his aggregate sentence is manifestly

_____

[1] **See** 18 Pa.C.S.A. §§ 2502(c), 4304(a)(1), 2701(a)(1), and 907(a), respectively.

excessive and disproportionate to his conduct. He also claims the court did not consider the mitigating evidence or his need for rehabilitation and failed to provide a written statement explaining its reasons for departing from the sentencing guidelines on his EWOC sentence. We affirm.

The trial court recounted the underlying facts as follows.

> In early August of 2018, Shanekia McNeil moved into a Philadelphia row house with two of her children, one-year-old son I.M. and seven-year-old son K.M. By mid-August, Ms. McNeil began dating defendant, James Shedrick, who moved into the house with Ms. McNeil and her two children. At one point while living at the home, defendant hit K.M. with a belt.

> On the morning of August 20, 2018, at around 9 a.m., Ms. McNeil went to court in Philadelphia with I.M. and K.M. to resolve a custody dispute concerning her other two children, A.G. (a five-year-old daughter) and R.G. (a two-year-old son). At around 4:30 p.m., Ms. McNeil returned home from the courthouse with I.M. and K.M. Shortly after returning, defendant also arrived back at the house, and Ms. McNeil fed I.M. and put him down for a nap in the living room. After putting I.M. down, Ms. McNeil left to go to the 17th district police station around 5:40 p.m. to pick up A.G. and R.G. at 6 p.m., pursuant to a custody order she had received earlier in court that day. Ms. McNeil left I.M. and K.M. in the care of defendant, who had offered to watch the children.

> When Ms. McNeil arrived at the police station around 6 p.m., A.G. and R.G. had not yet arrived. She waited between fifteen and thirty minutes before returning home to check on I.M. and K.M. When she returned home around 6:30 p.m., I.M. was still asleep in the living room, and K.M. was upstairs with defendant. Within minutes of returning home, Ms. McNeil received notice that A.G. and R.G. had arrived at the police station and were ready to be picked up. Accordingly, Ms. McNeil went back to the station.

> At some point after Ms. McNeil left, K.M. went downstairs to watch TV, and defendant took I.M. upstairs to the bathroom. While downstairs, K.M. heard I.M. crying and defendant yelling. K.M. also heard multiple "thumping" sounds coming from the base of the bathtub, which repeatedly interrupted I.M.'s crying.

Eventually, the crying stopped, and defendant came downstairs and put I.M. back down in the living room.

Defendant then called Ms. McNeil, who was still at the police station, and stated that "something was wrong with [I.M.]" Ms. McNeil directed defendant to call 911 and ran back to the house with A.G. and R.G. She arrived in less than ten minutes. When Ms. McNeil arrived home, defendant was holding I.M., who was unresponsive.

Within minutes, Philadelphia police responded to defendant's prior 911 call. Police arrived to find Ms. McNeil distraught on the floor with I.M., as well as defendant pacing, and immediately transported both Ms. McNeil and I.M. to Temple University Hospital. Defendant did not go to the hospital. At some point, defendant left the house, leaving K.M., A.G., and R.G. home alone. When another police officer arrived at the home around 7 p.m., K.M. informed him that he believed defendant had "shoved [I.M.] under the water," and "beat him in the tub." I.M. was pronounced dead at the Hospital at 8:01 p.m. The cause of death was blunt impact injuries to the torso, and the manner of death was homicide.

Trial Court Opinion, filed December 29, 2023, at 3-5 (citations to N.T. omitted).

Following a jury trial, Shedrick was convicted of third-degree murder and EWOC in relation to the death of I.M., and of simple assault of a child and PIC in relation to his having hit K.M. with a belt.

At sentencing, defense counsel argued Shedrick's mother exposed him to drugs when he was a minor, and he participated in a youth program for substance abuse. N.T., 5/31/23, at 13. Shedrick was diagnosed with ADHD and ADD as a child but was unable to consistently take medication until he was in juvenile placement. *Id.* at 12-13. The death of his grandmother spurred further drug use. *Id.* at 14. Shedrick has been active in the lives of his five children and attended his masjid regularly. *Id.* at 14-15.

- 3 -

Shedrick's sister testified that his mother, aunt, and uncle had not kept him clean, so she would wash him and buy him clothes. *Id.* at 17. She testified that Shedrick loves his children and had been considered the "family babysitter." *Id.* at 18. Shedrick's cousin testified that he tried to help raise Shedrick, until his father took him out of the Shedrick's household due to the drug use there. *Id.* at 20-21. He stated that the day before the murder, Shedrick watched his niece after he had begged Shedrick for help. *Id.* at 21. He testified that Shedrick is "not what that paper says." *Id.* Another acquaintance testified that Shedrick was a "good person" who always helped her children. *Id.* at 23. A member of the Metropolitan Christian Counsel of Philadelphia testified that the group was mentoring Shedrick and would support him in his future endeavors. *Id.* at 25.

Shedrick exercised his right to allocution. He alleged that McNeil had inflicted the deadly injuries on I.M., and that K.M. had lied to protect her. *Id.* at 38. Shedrick stated the reason he left the scene after calling 911 was because of his probation violation. *Id.* at 36. The court informed Shedrick he is entitled to assert his innocence and file an appeal, but that it was tasked with sentencing him based on the jury convictions. *Id.* at 39-40.

Before imposing sentence, the court stated,

> Let me start by saying what I'm going to take into account in determining an appropriate sentence. First of all, I'll take into account everything that was submitted to me throughout the history of this case, including all of the evidence that was presented during the jury trial, the information presented during and prior to this sentencing hearing. This includes the presentence [investigation ("PSI")] report, the investigation of prior record

score, the mental health evaluation, the letters that were submitted on behalf of the defendant. I'm taking into account all of the mitigating evidence that was submitted on behalf of Mr. Shedrick, including the statements from four people that I heard from here today during the sentencing hearing. I will say I've carefully also considered the sentencing guidelines.

I'm required to consider statutory factors, the need for the protection of the public. The prosecution is correct. The [PSI] report is replete with references to the defendant's proclivity towards violence, a history of violence. The investigator notes it's important to note that the defendant has a remarkable and documented history of unprovoked violence.

And the extent of the injuries to the child, I mean, I've been here in homicide since 2011, I've seen, unfortunately, a lot of cases involving children, but never with injuries worse than what I saw in this case to that one-year-old child. So, yes, I have concerns.

In terms of the gravity of the offense in relation to its impact on the victim and the community, well, there's not many more crimes that are considered more serious in our society than the murder of a helpless baby, which is what occurred here. I'll also take into account the defendant's rehabilitative needs, which I'm required to do and which I'm going to do.

When I consider everything, I think it's also appropriate for me to go over and comment on the mitigating and the aggravating factors that I noted both from the paperwork and during this hearing. There are mitigating factors here. The defendant, according to the [PSI] report, was born to a crack addict and had a terrible childhood. Despite that, he does have family support now present in the room. Obviously, he has significant mental health issues. And he's done things in the community to help out: Working in a nursing home, attempting to maintain some semblance of employment.

On the aggravating side, we have the murder victim is a one-year-old child. Third-degree murder guidelines apply to any victim under the age of 13. And in this situation, when the victim is substantially well under the minimum age that would result in this guideline applying, I can take that into account because that's a particularly vulnerable victim within the subset of the victims covered by -- in the less-than-13-year-old guideline.

The injuries to the child show a particularly cruel and vicious attack on this baby. The endangering the welfare of a child guidelines don't take into account that the conduct in this case resulted in the death of a child. . . . I simply note that the guidelines do not require the death of a child or even creating a serious risk of death of a child. And, obviously, that was present here, not contemplated by the guidelines.

The defendant committed this offense -- and this is a significant mitigating [sic] factor as far as I'm concerned -- he was on probation for guns and threats and absconded from supervision and there were wanted cards pending for him at the time that he committed this murder. That's a significant aggravating circumstance for me.

*Id.* at 41-44.

For Shedrick's third-degree murder conviction, the court imposed the statutory maximum of 20 to 40 years' incarceration. This was a standard-range sentence. *Id.* at 45; *see also id.* at 6-7. The court next sentenced Shedrick to the statutory maximum of five to 10 years' incarceration for EWOC. The court noted that this was an upward departure from the guidelines, due to the aggravating factors. *Id.* at 45; *see also id.* at 8. The court sentenced Shedrick to one to two years' incarceration for simple assault of a child and one to two years' incarceration for PIC. These were standard range sentences. *Id.* at 45-46; 8-9. The court explained it was statutorily required to run the murder sentence consecutively to any other sentence. *Id.* at 46. The court ordered all sentences to run consecutively. The aggregate sentence was 27 to 54 years' incarceration.

Shedrick filed post-sentence motions, which the trial court denied. Shedrick appealed.[2, 3]

Shedrick raises the following issue:

Did the lower court abuse its discretion and violate the Sentencing Code by sentencing [Shedrick] to a manifestly excessive sentence of 27 to 54 years, and specifically the statutory maximum sentence of 5-10 years on Count 2 – 18 § 4304 §§ A1 Endangering the Welfare of Children (CP-51-CR-0001429-2019), where this sentence far surpassed what was required to protect the public and account [Shedrick's]'s rehabilitative needs, mitigating circumstances, and the sentencing guidelines?

Shedrick's Br. at 5.

Because the right to appeal the discretionary aspects of a sentence is not absolute, we treat such a challenge as a petition for allowance of appeal. *Commonwealth v. Snyder*, 289 A.3d 1121, 1125 (Pa.Super. 2023). We will not reach the merits of the appeal unless

(1) the appeal was timely,

(2) the issue was preserved,

_____

[2] One of Shedrick's notices of appeal was premature, as it was filed before the court had decided the post-sentence motion at that docket. The court has since denied the post-sentence motion, and the appeal is perfected. *See* Pa.R.A.P. 905(a)(5); *Commonwealth v. Ratushny*, 17 A.3d 1269, 1271 n.4 (Pa.Super. 2011).

[3] Shedrick's notices of appeal purport to appeal from the denial of his post-sentence motions. We have amended the caption to reflect that the appeals properly lie from the judgments of sentence, which were rendered final by the denial of the post-sentence motions. *Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa.Super. 2001) (*en banc*) (correcting caption to reflect that appeal properly lies from judgment of sentence).

- 7 -

(3) the appellant's brief includes a Rule 2119(f) concise statement of the reasons relied upon for allowance of appeal, and

(4) the statement raises a substantial question whether the sentence is appropriate under the Sentencing Code.

*See id.* at 1126; Pa.R.A.P. 2119(f). "A substantial question exists when the appellant makes a colorable argument that the sentencing judge's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process." *Snyder*, 289 A.3d at 1126.

Shedrick filed timely notices of appeal and preserved his issue in his post-sentence motions. In his Rule 2219(f) statement, Shedrick argues that his aggregate sentence, which includes consecutive sentences at the statutory maximum for third-degree murder and EWOC, is manifestly excessive. Shedrick's Br. at 6. He further argues the court deviated from the guidelines on his EWOC sentence and violated Section 9721(b) of the Sentencing Code by imposing a sentence that was not consistent with his rehabilitative needs and "significant" mitigative factors. *Id.* at 8. These allegations raise a substantial question. *See Commonwealth v. Hill*, 210 A.3d 1104, 1116 (Pa.Super. 2019) (finding appellant's claim that trial court failed to consider sentencing factors and the sentence was excessive raised a substantial question). We therefore turn to the merits of the appeal.

Shedrick argues his sentence "is excessive, disproportionate, and unreasonable." Shedrick's Br. at 9. He asserts the court based its sentence solely on the gravity of the offenses and did not adequately consider "the

rehabilitative factors, mitigating evidence, and the sentencing guidelines." ***Id.*** Shedrick further contends the court did not submit in writing its reasons for departing from the guidelines. He points out that he offered character witnesses and evidence that as a minor, he was diagnosed with ADD and ADHD and received treatment for his substance abuse. He also points out his mother and other caretakers abused substances when he was a child, and failed to provide necessities for him, like clean clothes.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Snyder***, 289 A.3d at 1126 (citation omitted). "When reviewing sentencing matters, [the Superior Court] must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1134 (Pa.Super. 2009).

In imposing a sentence of total confinement, the court must consider the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. 42 Pa.C.S.A. § 9721(b); ***see also id.*** at § 9725 (stating the necessary considerations and available reasons for the imposition of total confinement). The court must also consider the minimum sentence ranges suggested by the sentencing guidelines. ***Id.*** at § 9721(b). However, "[w]here the court has the benefit of a PSI report, we presume the court was

aware of all appropriate sentencing factors and considerations[.]" ***Snyder***, 289 A.3d at 1126.

Where the court departs from the guidelines, it must provide a contemporaneous written statement of its reasons for doing so. 42 Pa.C.S.A. § 9721(b). This requirement is satisfied when the court states its reasons for the sentence on the record at the sentencing hearing. ***Commonwealth v. Smith***, 534 A.2d 836, 838 (Pa.Super. 1987). The court must state "the factual basis and specific reasons" justifying the departure. ***Commonwealth v. McLaine***, 150 A.3d 70, 76 (Pa.Super. 2016) (citation omitted); ***see also Commonwealth v. Robertson***, 874 A.2d 1200, 1213 (Pa.Super. 2005) (stating court may depart from guidelines where "the case under consideration is compellingly different from the 'typical' case of the same offense").

A court has discretion to run sentences consecutively. ***Commonwealth v. Hoag***, 665 A.2d 1212, 1214 (Pa.Super. 1995). A court does not abuse its discretion in imposing consecutive sentences "unless the aggregate sentence is grossly disparate to the defendant's conduct, or viscerally appear[s] as patently unreasonable." ***Commonwealth v. Bankes***, 286 A.3d 1302, 1310 (Pa.Super. 2022) (quotation marks and citation omitted) (alteration in original). However, a sentence for third-degree murder must be consecutive to any other sentence. 42 Pa.C.S.A. § 9711.1(c).

When reviewing the sentence, this Court will consider

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d). Our review of these factors, however, does not replace the judgment of the trial court. ***Snyder***, 289 A.3d at 1126-27. We will only vacate a trial court's sentence that exceeds the guidelines when it is "unreasonable" and will only vacate a guidelines sentence when it is "clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2), (c)(3).

We find no merit to Shedrick's claim that the court sentenced him solely based on the gravity of the offense and without due consideration of his need for rehabilitation or the mitigating evidence. The transcript of the sentencing hearing shows that the court carefully considered this evidence but found that it was outweighed by Shedrick's history of unprovoked violence, his flight from supervision, the brutality of his assault on I.M., and the need to protect the public. ***See*** N.T. at 41-44. It also stated it considered the PSI report, and we therefore presume the court was apprised of and duly weighed all relevant sentencing factors. ***Snyder***, 289 A.3d at 1126.

Nor do we find the court failed to state its reasons for departing from the guidelines when imposing a sentence of five to 10 years' confinement for the EWOC conviction. The court explained that while the guidelines include an enhancement for victims under the age of 13, the one-year-old victim in this case is at the far end of the spectrum of vulnerable victims to which the

enhancement applies. It also observed, "The injuries to the child show a particularly cruel and vicious attack on this baby," and the guidelines do not contemplate when an EWOC violation results in death or even the risk of death. And, while the guidelines contemplate the defendant's prior criminal record, the court observed that the guidelines do not account for the fact that Shedrick had absconded from supervision at the time he committed the instant murder. The court stated adequate reasons to justify the departure from the guidelines, and the sentence the court imposed was not unreasonable. *See* 42 Pa.C.S.A. § 9781(c)(3); *McLaine*, 150 A.3d at 76.

Finally, we do not find the aggregate sentence to be grossly disparate to the facts of this case. *Bankes*, 286 A.3d at 1310. We therefore affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/2/2024