J-S02036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                    :           PENNSYLVANIA
                                    :
               v.                        :
                                    :
                                    :
LUIS LOPEZ                            :
                                    :
              Appellant        :      No. 439 EDA 2024

Appeal from the Judgment of Sentence Entered September 6, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001266-2023

BEFORE: LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:            **FILED APRIL 23, 2025**

Luis Lopez appeals from the judgment of sentence entered following his guilty plea to robbery, possession of firearm prohibited, theft by unlawful taking, receiving stolen property, firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, possession of instrument of crime, simple assault, and recklessly endangering another person.[1] He challenges the discretionary aspects of his sentence. We affirm.

In July 2023, Lopez entered an open guilty plea to the above-mentioned offenses. The Commonwealth set forth the following facts, which Lopez agreed to:

> On January 24th, 2023, at J & L Grocery, located at 3401 North 3rd Street in the city and county of Philadelphia, the defendant, later identified through investigation as Luis

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(i), 6105(a)(1), 3921(a), 3925(a), 6106(a)(1), 6108, 907(a), 2701(a), and 2705, respectively.

Lopez, entered the store and approached an older gentleman who was playing at the gambling machine in that store. He was later determined to be an employee of J & L Grocery. At that time[,] video surveillance camera captured and depicts Mr. Lopez entering into the store, engaging in conversation with [Jorge] Hilario, and then ultimately a firearm being pulled on him.

At that point there was a struggle that ensued. They go back into the cashier's booth, at which point Mr. Lopez is seen taking United States currency from the cash register, and then most significantly a firearm is found behind the cashier's booth, which is forcibly taken from Mr. Hilario.

At that point in time the struggle continued before Mr. Lopez exits the store, but before he did so, he pointed the firearm at Mr. Hilario, who was determined to be 69 years old at the time of this incident.

It was approximately 1:57 p.m.

Again, surveillance video was collected by both Detective [Alfred] Bender and [Timothy] Fitzgibbon of East Detectives. They collected more video from the area of American and Ontario Street, which was another corner store.

This was video at approximately 2:01 p.m., just moments later.

That video depicts Mr. Lopez entering in the same clothing he was wearing in the first video and then undressing in the new store and getting rid of all the clothing that was just worn prior, during the commission of the robbery.

Further video recovered from Dillman and Tioga Street -- again, this is now a block, block and a half away from the original location -- depicts Mr. Lopez now in clothes he was wearing underneath the clothes he was wearing in the robbery and making purchase at one store.

. . .

After the collection of the video, a search warrant, that was Search Warrant No. 23000164, was prepared for the home of Mr. Luis Lopez, and recovered from the home were several of the clothing items that were worn by Mr. Lopez

> on the day of the incident. Pursuant to that, Mr. Lopez was taken into custody and engaged in a post-Miranda interview, at which time he ultimately confessed to both Detective Fitzgibbon and Bender that he was, in fact, the perpetrator of the robbery that was depicted in the initial video at J & L Grocery and he did identify himself in still images, and that the firearm was, in fact, a real firearm that he stole from J & L Grocery.

N.T., July 6, 2023, at 13-16.

At sentencing, the trial court stated it "thoroughly reviewed" the presentence investigation report ("PSI") and mental health report. N.T., Sept. 6, 2023, at 5. For robbery, with the deadly weapon enhancement, the court and parties agreed the Sentencing Guidelines range was 54 to 66 months plus or minus 12 months. *Id.* at 6. The Commonwealth recommended an aggregate sentence of eight to 16 years' incarceration. The Commonwealth played the compilation video recording described at the guilty plea hearing and argued Lopez held the victim at gunpoint, tried to shed clothing to conceal his identity, and informed the detectives that the firearm stolen during the robbery was in an alleyway. *Id.* at 7-11. The Commonwealth pointed out that, because the firearm had not been recovered, there was "another unaccounted illegal firearm on the streets of Philadelphia." *Id.* at 11.

Lopez's counsel requested a three to six year sentence. *Id.* at 12. He argued the "reason for [the] crime" was Lopez's "terrible drug addiction." *Id.* at 12. Counsel stated Lopez was high at the time of the robbery, which he committed to buy more drugs. *Id.* at 13. Counsel argued a sentence of three

to six years would ensure Lopez received the message that he could not act as he did, but also allow him to get help. *Id.* at 14.

Lopez admitted to his crimes and stated that he would like to take back the day of the robbery and that he was addicted to drugs and suffered a cycle of addiction, rehab, and relapse. *Id.* at 17-18.

Before imposing sentence, the trial court stated:

> So this incident presents me with a myriad of stories. You were saying that it occurred because you were high. That seems consistent because in the presentence investigation report, you blame all of your crimes on your addiction or you [cite] your addiction as a basis for all of your criminal incidents.
>
> The presentence investigation report indicates that the reason you committed this incident was to get medication for your child who was sick, and yet today you indicate that you really don't get to see your children because you are in and out of treatment[.]
>
> . . .
>
> So the stories just don't add up. Now, maybe there's an issue as to time and understanding because of your addiction, that's possible, I can understand that. But I do see a pattern and an increase in behavior which concerns me. There is a pattern of addiction but there's a pattern of continued addiction that's leading to violent behavior.
>
> The employee of that, I guess it was a bodega that was working there and you came in and you grabbed a hold of his arm and forced him into the area. He offered you his wallet. He said, look, take my wallet first. I didn't see him pull a gun in the video. Maybe I missed it. But I did see you with a gun on him. And that's frightening for a couple of reasons.
>
> A gun serves only one purpose. There's no other purpose. A gun's purpose is to kill. There are people who have guns that go shooting. There are people who have guns, even if

you're hunting, the purpose of a gun is to kill animals, so people go hunting, and that's to kill animals. Well, we don't have hunting in the city limits of Philadelphia. I'm sure we all think we could shoot some of these rats and pigeons, but we don't do that here.

So the only reason you have a gun in Philadelphia is protection if you're are [sic] law enforcement or you're licensed to carry a gun or in your home or business. And that level of protection is to protect your life or the lives of others.

So when you have a gun and you pull a gun on somebody, there is a real sense of danger that that person could be killed or someone could be killed, so when you aim a gun at somebody, someone could die. Your finger could slip on the trigger or something could happen or someone could be dead or seriously injured and harmed.

Again the purpose of guns is to kill people so someone could die. And it is more of a concern that you are high if you have this type of weapon in your hands. So that is of great concern. We don't pull guns out to scare people. And anyone who trains people in firearms will tell you, you don't pull a gun out to scare somebody, you pull a gun out to use it.

I am also concerned because the victim in this case, again as the last case I had, as the cases keep coming in here is age of 60 years old. And as I indicated the Legislature with that case agrees with me that there are different sentencings for offenses against elderly persons.

Now, we don't like to think of 60 year olds necessarily as elderly. I don't because I'm getting close to that age but it is what it is it. And there's a reason for that. Your body is not the same. That 65-year-old person could have had a heart attack seeing a gun. The fear of that weapon itself could have impacted his health, his life, the struggle. You held onto him, he could not have run away if he wanted to. You forced him into a small area where there was no retreat.

The guidelines which you are facing are well above the range of Section 9717, sentences for offenses against elderly persons. Given your history of probation and failure

> to comply also advises the Court that you are not amenable to a sentence of probation supervision as well.
>
> In fashioning your sentence, the Court is taking into account the need to protect the public, the gravity of these offenses as they relate to the impact on the life of the victim and on the community, but I am also carefully considering your rehabilitative needs, Mr. Vale Lopez, you do have a history of drug addiction.

*Id.* at 21-25.

The court sentenced Lopez to five to 10 years' incarceration for robbery, a consecutive two to four years' incarceration for possession of firearm prohibited, and a concurrent term of one to two years' incarceration for firearms not to be carried without a license. The court imposed no further penalty on the remaining convictions. The aggregate sentence was seven to 14 years' incarceration. The trial court further stated it would recommend incarceration at SCI Chester, which has a drug treatment program, and ordered supervision by the mental health state probation upon Lopez's release.

Lopez filed a post-sentence motion seeking reconsideration of the sentence. The motion was denied by operation of law. Lopez filed a notice of appeal.[2]

Lopez raises the following issue:

_____

[2] In this Court, Lopez filed a petition to vacate briefing schedule and/or the *nunc pro tunc* filing of 1925(b) statement, alleging counsel mistakenly believed she had timely filed the 1925(b) statement and, because she had not, requesting a finding of counsel ineffectiveness *per se*. This Court remanded to the trial court for the filing of a 1925(b) statement and supplemental Rule 1925(a) opinion. Order, filed Apr. 29, 2024.

> Did the lower court err as a matter of law, abuse its discretion, violate general sentencing principles, and impose a non- individualized sentence when it imposed a sentence of 7 to 14 years' incarceration, a manifestly excessive sentence in light of the fact Mr. Lopez entered an open guilty plea, accepting full responsibility for his actions, and a total incarceration sentence does not take into account his need for treatment and rehabilitation for his dual diagnosis of bipolar disorder, post-traumatic stress disorder and drug addiction?

Lopez's Br. at 3.

Lopez challenges the discretionary aspects of his sentence. To obtain review of such a challenge, the appellant must have: 1) filed a timely appeal; 2) preserved each such claim at sentencing or in a post-sentence motion; 3) included in his appellate brief a concise statement of reasons relied upon for allowance of appeal; and 4) and raised a substantial question. *See Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa.Super. 2018) (*en banc*); Pa.R.A.P. 2119(f) (requiring appellant challenging discretionary aspects of sentence to "set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence").

Here, Lopez filed a timely appeal, preserved his claim in a post-sentence motion, and included in his appellate brief a concise statement of reasons relied on for appeal. Further, he raised a substantial question—whether the court failed to consider his rehabilitative needs leading to the imposition of an excessive and unreasonable sentence. *Commonwealth v. Snyder*, 289 A.3d 1121, 1126 (Pa.Super. 2023) (finding an excessive sentence claim coupled

with a claim of disregard for appellant's "rehabilitative potential" raises a substantial question). We therefore will review the merits of his claim.

Lopez argues the trial court ignored that he had bipolar disorder, post-traumatic stress disorder, and focused only on his drug addiction. He claims the sentence ignores the root of Lopez's problems—the mental health component of his need for treatment. He claims the court merely recited the factors and ignored the mental health component of his diagnosis, and maintains he was self-medicating.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa.Super. 2018) (citation omitted). An abuse of discretion occurs where "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* (citation omitted). In imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). In conducting appellate review, we "cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009).

Here, the trial court did not abuse its discretion in imposing the seven to 14 year sentence. The court had a PSI report, and is presumed to be aware

of all appropriate sentencing factors and considerations. *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa.Super. 2009). Further, the court considered the mental health report, heard allocution from Lopez, and arguments from Lopez's counsel and the Commonwealth. The court discussed the crime and its impact on the victim and community, the need to protect the public, as well as Lopez's rehabilitative needs, including his need to treat his addiction and his mental health diagnoses. This claim fails.

Judgment of sentenced affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/23/2025